UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


JEREMY ROSS MARJAMAA,                           Case No. 2:19-cv-224

                    Plaintiff,                  Hon. Hala Y. Jarbou
                                                U.S. District Judge
        v.

DANIEL LASLEY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

        This Report and Recommendation (R&R) addresses Defendant Deputy Daniel

Lasley's motion for summary judgment.  (ECF No. 37.)

        Jeremy Ross Marjamaa filed this civil rights action pursuant to 42 U.S.C.

§ 1983 on November 5, 2019.  (ECF No. 1.)  Marjamaa, who represents himself, then

filed eleven supplements to his complaint.  (ECF Nos. 3-5, 7-12, 14, 15.)  As a result,

this Court ordered Marjamaa to file an amended complaint (ECF No. 22), which he

did on May 6, 2020 (ECF No. 23).  Neither of Marjamaa's complaints were verified.

        Daniel Lasley, who Marjamaa identifies as a deputy sheriff and tether officer

for the Chippewa County Sheriff's Office, is the defendant in this case.  (*Id*.,

PageID.171.)  The undisputed evidence in this case establishes that Marjamaa was

detained in Chippewa County on criminal charges and then chose to participate in

the tether program offered by the County's Sherriff's Office.  (ECF No. 37-3,

PageID.246.)   Marjamaa signed a tether agreement in which he agreed that law enforcement officers could enter his residence upon "completion of the program, removal from the program, arrest, *escape* or death."   (ECF No. 37-1, PageID.238 (emphasis added).)   The evidence also establishes that, on July 7, 2019, Marjamaa cut off his tether and escaped.   (ECF No. 37-3, PageID.247.)   Upon learning of Marjamaa's escape, Deputy Lasley searched Marjamaa's hotel room.   (*Id.*)   Marjamaa remained at large for two months.   (ECF No. 37-2, PageID.244.)   When he was detained once again, Marjamaa pled guilty to felony tampering with an electronic monitoring device.   (ECF No. 37-6, PageID.258.)   Despite these facts, Marjamaa says that Lasley violated his rights under the Fourth Amendment to the U.S. Constitution as well as Article I of the Michigan Constitution by searching the motel room after Marjamaa fled.   (ECF No. 22, PageID.173.)   Marjamaa sues Lasley is his official and personal capacities.   (*Id.*, PageID.171.)   He seeks damages.   (*Id.*, PageID.173.)[1]

In his motion, Deputy Lasley asserts that he did not violate Marjamaa's Fourth Amendment rights because Marjamaa did not have an expectation of privacy in the hotel room or possessory interests in the items that Lasley seized.   (ECF No. 37, PageID.223–28, 230–31.)   He also asserts that he is entitled to summary judgment

---

[1]      Marjamaa is no stranger to Fourth Amendment claims against Chippewa County officials. In 2019, he filed a Fourth Amendment suit against another Chippewa County Deputy Sherriff asserting that his vehicle was subject to an unreasonable search. *See Marjamaa v. Mitchell*, W.D. Mich. Case No. 2:19-cv-197. In 2020, Marjamaa filed a complaint against a Chippewa County District Court Judge, a Chippewa County Assistant Prosecutor, the Chippewa County Prosecutor, the Chippewa County Chief Public Defender, and a Chippewa County Circuit Court Judge arising out of the same search. *See Marjamaa v. France, et al.,* W.D. Mich. Case No. 2:19-cv-232.

in his personal capacity based on qualified immunity, and in his official capacity because Marjamaa does not allege that a municipal policy or custom was involved. (*Id.*, PageID.229–31.)  Finally, Lasley argues that Marjamaa's state constitutional claim should be dismissed because the Michigan Constitution does not create a private cause of action for damages against individuals. (*Id.*, PageID.233.) Marjamaa did not file a response.

After reviewing the pleadings, depositions, affidavits, and admissions on file, the undersigned concludes that there are no genuine issues of material fact, and that Deputy Lasley did not violate Marjamaa's Fourth Amendment rights.  As such, the undersigned respectfully recommends that the Court grant Deputy Lasley's motion for summary judgment.

If the Court adopts the undersigned's recommendations, this case will be dismissed.

## II.    Uncontroverted Facts

The documents provided by Lasley[2] establish the following:  In November 2018, Marjamaa was arrested in Chippewa County on criminal charges.  (ECF No. 37-3, PageID.246.)  Rather than remaining in custody pending trial, Marjamaa chose to participate in the tether program run by the Chippewa County Sheriff's Office ("Sheriff's Office").  (*Id.*, PageID.247.)   On July 3, 2019, Marjamaa signed the

---

[2]     The only document provided by Marjamaa containing additional relevant, undisputed facts is the court transcript from the 91st District Court in Chippewa County, which reflects testimony from both Marjamaa and Deputy Lasley regarding Marjamaa's participation in the tether program and removal of the tether.  (ECF No. 7-2.)

Electronic Tether Program Requirements and Rules ("Tether Agreement"), by which he accepted certain terms and conditions in exchange for his pretrial release.  (ECF No. 37-1, PageID.238.)   These conditions included an authorization allowing law enforcement officials, including tether officers, to enter Marjamaa's residence at any time and to remove tether equipment upon termination of the program, whether due to completion, removal, death, or escape.  (*Id.*)  The Tether Agreement is shown below.



(*Id.*)

Because Marjamaa was a resident of Calumet County but wished to participate in Chippewa County's tether program, Marjamaa rented a room at the Skyline Motel in Sault Ste. Marie beginning on approximately July 5, 2019.  (ECF No. 37-6,

4

PageID.257.)   The Sheriff's Office erected an electronic barrier around the motel premises within which Marjamaa was permitted to move.  (ECF No. 7-2, PageID.53.) Marjamaa paid his motel room through approximately July 12, 2019.  (ECF No. 37-6, PageID.257.)   At the same time, as a part of his duties, Deputy Lasley was responsible for administering the tether program. (ECF No. 37-3, PageID.246-47.) This included transporting individuals participating in the program to their residence, conducting home inspections, and ensuring compliance with the rules and conditions of release.  (ECF No. 7-2, PageID.51–52).

On July 7, 2019, Deputy Lasley received a "strap alert"[3] from Marjamaa's tether, which Deputy Lasley tracked to a parking lot near the motel.  (ECF No. 37-3, PageID.247.)  When Lasley arrived at the lot, he found that Marjamaa had cut the strap, removed the device, and absconded.  (*Id.*)  Deputy Lasley then contacted the motel clerk, who informed him that the motel wanted Marjamaa's belongings removed before accompanying Lasley to Marjamaa's room.  (*Id.*)   Lasley found Marjamaa's door propped open. (ECF No. 7-2, PageID.62.)  After entering the room, he removed the tether's charger, a necklace, piece of paper, and a pair of reading glasses. (ECF No. 37-2, PageID.248.)  These items (except for the charger) are pictured below.

---

[3]      In Chippewa County, deputy sheriffs are part-time employees.  (ECF No. 7-2, PageID.54.)  When the deputies are off duty, the Michigan Department of Corrections monitors electronic tethers, and will call the deputies, text them, or email them if, for example, a tether is cut.  (*Id.*)  These communications are referred to as "strap alerts." (*Id.*)



(ECF No. 37-5).  Per Marjamaa's own admission, none of these items belonged to him. (ECF No. 37-6, PageID.260.)

Marjamaa never returned to his motel room.  (*Id.*)  He only learned of the entry and seizure after his mother called the motel on an unknown date, and an employee informed her that the motel had closed the room, which was now empty.  (ECF No. 37-6, PageID.259.)  Marjamaa was not taken back into custody until September 2019 (ECF No. 37-2, PageID.244), after which he pled guilty to felony tampering with an electronic monitoring device (ECF No. 37-6, PageID.258).  On November 5, 2019, Marjamaa filed this lawsuit against Deputy Lasley alleging violations of the Fourth Amendment and the Michigan Constitution based on Lasley's July 7, 2019 entry into his motel room, and the subsequent removal of his personal items.

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Because Rule 56 places the burden of establishing that there are no genuine issues of material fact on the moving party, Fed. R. Civ. P. 56(c), a non-moving party's failure to respond in opposition to summary judgment is insufficient alone to warrant summary judgment in favor of the moving party.  *Carver v. Bunch*, 946 F.3d 451, 452-55 (6th Cir. 1991).

### IV.    Fourth Amendment Analysis

The Fourth Amendment protects individuals against unreasonable searches and seizures of their person and property.  U.S. Const. amend. IV.  Reasonableness is determined by "balanc[ing] the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *see also Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). Subject to a few narrowly defined exceptions, searches conducted without a warrant are per se unreasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 444–45 (1971). One such exception exists when an individual gives voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Because Fourth Amendment protections are particular to individuals, a plaintiff alleging an unconstitutional search must show that "he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . ." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also Katz v. United States*, 389 U.S. 347, 361 (2001). Similarly, a plaintiff alleging an unconstitutional seizure must show a "meaningful interference with [the plaintiff's] possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

### a.  Lasley's search of Marjamaa's hotel room

As a general rule, the scope of the Fourth Amendment extends to temporary residences such as hotel rooms. *Stoner v. California*, 376 U.S. 483, 490 (1964); *Hoffa v. United States*, 385 U.S. 293, 301 (1966); *United States v. Allen*, 106 F.3d 695, 698 (6th Cir. 1997). During the time in which an individual inhabits such a residence, they possess the same privacy interests as individuals within their home. *Minnesota v. Olson*, 495 U.S. 91, 99 (1990). While hotel guests can permit entry into the residence via their own consent, hotel personnel do not retain the authority to allow

third parties such as law enforcement officers into the spaces without a warrant. *United States v. Bass*, 41 F. App'x 735, 737 (6th Cir. 2002). These privacy rights only expire such that hotel personnel regain the authority to allow third parties to enter upon the individual's abandonment of the hotel room or his lawful eviction by hotel staff. *United States v. Lanier*, 636 F.3d 228, 232 (6th Cir. 2011) (citing *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997)).

In asserting that his entrance into Marjamaa's room was constitutionally sound, Deputy Lasley argues that Marjamaa voluntarily consented to the search, and that he abandoned his motel room.[4] (ECF No. 37, PageID.222–23.)

### i. Consent

Deputy Lasley argues that he did not need to obtain a warrant to search Marjamaa's motel room after he escaped because Marjamaa voluntarily consented to such a search when signed and initialed the Tether Agreement. To establish the voluntariness of consent, the State must show that consent was not given as "the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). "Voluntariness is a question of fact to be determined from all circumstances," and "the subject's knowledge of a right to refuse is a factor to be taken into account." *Id.* at 248–49.

---

[4]    While Lasley also argues that he reasonably relied on the apparent authority of the motel clerk in entering Marjamaa's room, and that the search qualifies as a special needs search (ECF No. 37, PageID.222–23), these additional arguments need not be addressed because the undersigned finds that Marjamaa validly consented to the terms of the Tether Agreement.

9

Here, Marjamaa was given two options while awaiting trial in July of 2019. Marjamaa could remain in the custody of Chippewa County, or he could participate in the County's tether program.  To participate in the program, the Tether Agreement made clear that Marjamaa would have to allow law enforcement officers access to his residence to perform their duties.  (ECF No. 37-6.)  It made equally clear that one of these duties included entering the residence upon completion or removal from the tether program or Marjamaa's arrest, escape, or death.  (*Id*.)  Not only did Marjamaa agree to these terms, but he went so far as to establish a residence at a motel within Chippewa County so that he could be released from custody pending trial.  (ECF No. 37-6, PageID.257.)  He then overtly violated the terms of his agreement and escaped, later pleading guilty to the felony charge of tampering with an electronic monitoring device.  (ECF No. 37-6, PageID.258.)  Considering these circumstances, it is clear Deputy Lasley had Marjamaa's voluntary consent to search the motel room.[5]

## ii.  Abandonment

As an alternative to consent, Deputy Lasley argues that Marjamaa abandoned his motel room prior to the July 7, 2019 search.  (ECF No. 37, PageID.223.)  While Marjamaa had not formally checked out of the room, which was paid through the

---

[5]     The undersigned notes that any other finding would render the County's tether program infeasible, to the detriment of those adhering to its terms.  Pretrial release is an alternative to pretrial detention, meant to benefit those participating.  It does not detract from the County's interests in ensuring that accused individuals show up to their trials and preventing further criminal acts.  Moreover, the search terms within the agreement do not ask pretrial detainees to forfeit their rights entirely, nor do they ask pretrial detainees to forfeit rights they would otherwise have—it is well established that warrantless searches of pretrial detainees' quarters in state custody are reasonable.  *Bell v. Wolfish*, 441 U.S. 520, 556–57 (1861).

following week, (ECF No. 37-6, PageID.257), Deputy Lasley argues that Marjamaa exhibited an intent to abandon the room by removing his tether and absconding (ECF No. 37, PageID.223).

Courts considering abandonment in the context of hotel rooms have consistently required some act of checking out or non-payment to establish abandonment. *See Abel v. United States*, 362 U.S. 217, 241 (1960) (finding that hotel staff had the authority to consent to a search after "petitioner had paid his bill and vacated the room"); *United States v. Gonzales*, No. 94-1116, 1995 WL 49109, at *3 (6th Cir. Feb. 7, 1995) (finding that a defendant abandoned his hotel room after his reservation expired, the hotel double-locked the door to his room, and further charges were based solely on the property left behind); *United States v. Parizo*, 514 F.2d 52, 54 (2nd Cir. 1975) (finding that a defendant abandoned his hotel room by allowing the room's rental period to expire); *United States v. Akin*, 562 F.2d 459 (7th Cir. 1977) (same); *United States v. Ramirez*, 810 F.2d 1338 (5th Cir. 1987) (same).  Once an individual is found to have abandoned his hotel room, he no longer has privacy expectations in the room, and hotel staff may consent to law enforcement officers searching the room without running afoul of the Fourth Amendment. *Gonzales*, 1995 WL 49109, at *3.  An individual does not abandon their hotel room simply by leaving for a short period of time. *Watson v. Pearson*, 928 F.3d 507, 511 (6th Cir. 2019).  Nor has any court determined that the act of leaving the door to the motel room ajar alone constitutes abandonment.

11

That being said, the circumstances of Marjamaa's stay were unique. Marjamaa was not simply renting a motel room as a temporary residence, from which he was free to leave and return.  He was renting a motel room for the purposes of pretrial release.  (ECF No. 7-2, PageID.52–54.)  Marjamaa could not leave the area immediately surrounding his motel room without violating the terms of his release, upon which he would be returned to the Chippewa County Jail.  (ECF No. 37-1.) Whether or not Marjamaa abandoned the motel room as courts traditionally employ the term, thereby restoring the motel staff's authority to consent to a search of the room, Marjamaa knew that cutting his tether and fleeing would give Deputy Lasley the authority to search his room under the Tether Agreement.  (ECF No. 37-6.)

### iii.  Totality of the circumstances

Although the undersigned determined that Marjamaa validly consented to Deputy Lasley's search when he signed and initialed the terms of the Tether Agreement, the undersigned also notes that the search was reasonable under the totality of the circumstances.  Indeed, Marjamaa's participation in the tether program has great bearing on his reasonable expectation of privacy in the motel room.  *See Norris v. Premier Integrity Sols., Inc.*, 641 F.3d 695, 700 (6th Cir. 2011) ("[Plaintiff] had a significantly reduced expectation of privacy because he was on pretrial release awaiting criminal prosecution . . . .").

In *United States v. Knights*, the Supreme Court affirmed the constitutionality of a warrantless search based on reasonable suspicion where the individual's probation order included a search condition.  534 U.S. at 121.  The Court reasoned

that because the search condition was "clearly expressed" and the probationer was "unambiguously informed" of the condition, his reasonable expectation of privacy was "significantly diminished." *Id.* at 119–20.  Further, the Court determined that the government had dual legitimate interests in furthering rehabilitation via probation and protecting citizens from further crimes at the hands of the probationer.  *Id.* at 119.  Considering the totality of the circumstances, the Court decided that the search was reasonable and therefore constitutionally valid.  *Id.* at 120.  Later, in *Samson v. California*, the Court extended its decision to parolees, and to searches based on conditions of probation or parole even in the absence of reasonable suspicion. 547 U.S. 843, 857 (2006).

In *Norris v. Premier Integrity Solutions, Inc.*, the Sixth Circuit applied the logic used in *Knights* and *Samson* to an individual on pretrial release.  641 F.3d 695 (2011). There, the plaintiff alleged that the method through which he was administered drug tests, in accordance with the terms of his release, were unreasonable and in violation of his Fourth Amendment rights.[6]  *Id.* at 697.  The Sixth Circuit reasoned that the plaintiff had a "significantly reduced expectation of privacy" due to his participation in the pretrial release program, that the term requiring drug tests furthered a legitimate government interest in ensuring compliance with the program, and that the methods of conducting the test were reasonable under the totality of the

---

[6]    As explained by the Sixth Circuit in *Norris*, state-compelled urinalysis constitutes a search subject to requirements of the Fourth Amendment. *Norris v. Premier Integrity Solutions, Inc.*, 641 F.3d 695, 698 (2011) (citing *Veronica Sch. Dist. 4J v. Acton*, 515 U.S. 646, 652 (1995)).

circumstances.  *Id.* at 700–01.  The *Norris* court rejected the plaintiff's contention that the tests had to be supported by reasonable suspicion.  *Id.* at 701; *cf. United States v. Scott*, 450 F.3d 863 (9th Cir. 2006) (finding that an officer could not constitutionally administer a drug test pursuant to a pretrial release agreement in the absence of probable cause).

As in *Knights*, *Samson*, and *Norris*, Marjamaa's signature on the Tether Agreement conditioning release on the ability of law enforcement officers to search Marjamaa rendered him "unambiguously aware" of his reduced expectation of privacy.  *Id.* at 700–01; *Samson,* 547 U.S. at 857; *United States v. Knights*, 534 U.S. 112, 119–20 (2001).  Considering Marjamaa's diminished expectation of privacy, the undersigned must look to the necessity of warrantless searches in furthering legitimate governmental interests.  While pretrial detention, and therefore pretrial release programs, are distinct from probation or parole in that they are not forms of punishment, their means and objectives often overlap.  As recognized in *United States v. Salerno*, "the government's interest in preventing crime by arrestees is both legitimate and compelling."  481 U.S. 739, 749 (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960)).  The same is true of the government's interest in ensuring that individuals on pretrial release appear in court.  *Bell v. Wolfish*, 441 U.S. 520, 534 (1979) ("Nor do [the parties] doubt that the Government has a substantial interest in ensuring that persons accused of crimes are available for trials . . . ."); *Norris*, 641 F.3d at 699 ("A major aim of the [pretrial release program] is to insure that its participants will appear at trial.").  Like the state in *Knights* and *Salerno*, one way

14

Chippewa County furthers its objectives is by imposing warrantless search terms on individuals who choose to participate in its tether program.

Here, Deputy Lasley entered Marjamaa's room only after finding his electronic tether abandoned outside of the boundaries established by the Sheriff's Office. (ECF No. 37-3, PageID.247.) The terms of the Tether Agreement that Marjamaa voluntarily signed stipulated that moving outside of the established boundaries would result in Marjamaa's return to jail, and expressly allowed law enforcement officers into Marjamaa's residence in the event of escape. (ECF No. 37-1.) Considering the totality of the circumstances, Deputy Lasley's warrantless entrance into Marjamaa's room was reasonable, and did not offend Marjamaa's Fourth Amendment rights.

### b. Lasley's seizure of property within the motel room

Turning then to the property that Lasley seized from the motel room, even construing the evidence in the light most favorable to Marjamaa, he has failed to create a genuine issue of material fact as to any meaningful interference with his possessory interests. As discussed above, an individual has a Fourth Amendment right to the reasonable seizure of *his* effects. U.S. Const. amend. IV; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). According to Marjamaa, the property seized in violation of his Fourth Amendment rights consisted of photographs of his children, jewelry, some clothes, hygiene products, and around two-hundred dollars in cash. (ECF No. 37-6, PageID.260.) However, Marjamaa conceded that he does not have personal knowledge as to who removed this property, or where it went. (ECF No. 37-

6, PageID.259.)  He knows only that when his mother called the motel at some point after Lasley entered his room, the clerk informed her that the motel had closed the room, and the room was now empty.  (*Id.*)  Based on that information, Marjamaa merely assumed that Lasley was the individual who took his personal property.  (*Id.*)  An assumption is not sufficient to create an issue of material fact.  *Marshall v. Decatur Cty. Gen. Hosp.*, 698 F. Supp. 2d 1009, 1015 (W.D. Tenn. 2010) ("Unjustified assumptions do not create a genuine issue of material fact. . . .").

Further, insofar as Marjamaa might assert that Deputy Lasley's seizure of the necklace, blank piece of paper, and pair of glasses, interfered with his possessory interests, Marjamaa has not established that he had such possessory interests in the property, nor that the Lasley meaningfully interfered with those interests.  In his deposition, Marjamaa conceded that the necklace belonged to his girlfriend; he was unaware who the glasses belonged to; and he did not recognize the piece of paper. (ECF No. 37-6, PageID.260.)  In fact, Deputy Lasley only took the three items for safe keeping after the motel clerk informed him that the motel intended to close Marjamaa's room (ECF No. 37-5), which Marjamaa had left propped open when he removed his tether and absconded from the area (ECF No. 7-2, PageID.62).

Deputy Lasley did not violate Marjamaa's Fourth Amendment right to be free from the unreasonable seizure of his personal effects (1) because Deputy Lasley did not in fact seize Marjamaa's personal effects, and (2) because Marjamaa does not allege that he had a possessory interests in the property that Lasley did seize, and

16

(3) because Marjamaa has not shown that the seizure meaningfully interfered with his possessory rights,

## V.   Qualified Immunity

As another alternative, Deputy Lasley asserts that he is entitled to qualified immunity from liability on the basis that Lasley's conduct was not a clearly established violation of the Fourth Amendment as of July 2019.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.*  (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.*  (citing *Pearson*, 555 U.S. at 236).  A

government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

18

> This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

The undersigned addressed the first prong above and determined that Deputy Lasley acted reasonably under the totality of the circumstances in searching Marjamaa's motel room. There was no genuine issue of material fact. In other words, the undersigned determined that Deputy Lasley did not violate Marjamaa's Fourth Amendment rights. Because no violation occurred, it is unnecessary for the undersigned to address the clearly established prong. The undersigned finds that Deputy Lasley is entitled to qualified immunity in his individual capacity.

## VI.   **Official Capacity**

Local governments and their officials may be sued under 42 U.S.C. 1983 and are not subject to absolute immunity under the Eleventh Amendment. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694–701 (1978). When a plaintiff sues a municipal actor in their official capacity, "in all respects other than name," the plaintiff is suing the municipality. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)

19

(citing *Brandon v. Holt*, 469 U.S. 464, (1985)).  However, plaintiffs cannot sue a local government based merely on the unconstitutional conduct of its official.  *Monell*, 436 U.S. at 694. Instead, the plaintiff must show that a municipal policy or custom is a "moving force" behind the violation.  *Graham*, 473 U.S. at 166 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)).

While Marjamaa filed a court transcript from the county court in which Deputy Lasley testified that he is typically not required to obtain a warrant when acting in his capacity as a tether officer, that is the full extent to which any kind of practice is mentioned. (ECF No.7-2, PageID.62.)  Moreover, as discussed above, the challenged action in this case was constitutional.  Marjamaa has failed to create a genuine issue of material fact as to a policy or custom of Chippewa County that was the "moving force" behind a violation of his constitutional rights.

## VII.   Marjamaa's State Constitutional Claims

In addition to asserting violations of his federal constitutional rights, Marjamaa asserts that Deputy Lasley's search violated Article I § 11 of the Michigan State Constitution which reads in pertinent part, "[t]he person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures."  Mich. Const. art. I, § 11.

In *Jones v. Powell*, the Supreme Court of Michigan considered whether Michigan's constitution created a private cause of action against municipalities or municipal employees. 462 Mich. 329 (2000).  The court had previously acknowledged a private cause of action against the state arising out of the Michigan Constitution

but had not acknowledged the same in the context of individual actors or municipalities. *Smith v. Dep't of Pub. Health*, 428 Mich. 540, 544 (1987). In declining to extend the private cause of action recognized in Smith beyond actions against the state itself, the court reasoned that, unlike states or state actors sued in their official capacity, municipalities and actors sued in their individual capacity may be held liable under 42 U.S.C. § 1983. Jones, 462 Mich. at 335–37. Accordingly, Marjamaa's claim for damages based on Deputy Lasley's alleged violation of the Michigan Constitution must fail.

## VIII. Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment.

If the Court accepts this recommendation, this case will be dismissed.

Dated:   September 16, 2021                        /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).